**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TOMMIE JOE MOORE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-14-533-F** |
| | ) | |
| **TRACY MCCULLUM, Warden,** | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Tommie Joe Moore, a state prisoner appearing *pro se*, has filed a

Petition for Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254

challenging the constitutionality of his state court convictions. Respondent has filed his

Response to Petition for Writ of Habeas Corpus (ECF No. 7) and Petitioner has replied.

(ECF No. 13). For the reasons set forth below, it is recommended that the Petition be

**DENIED**.

## I.     STATEMENT OF FACTS

On February 18, 2011, police stopped a car occupied by Sally Estrada and her

boyfriend, Lincoln Floyd, and found a vial of clear liquid in their possession. The officers

believed the clear liquid in the vial was a controlled substance. In return for an offer of

leniency, Estrada and Floyd agreed to act as confidential informants for Justin Scott, the

Director of the District Six Drug Task Force. Later that same day, Scott equipped

Estrada with an audio/visual recording device, gave her $275.00 to purchase

methamphetamine from Petitioner, and Scott, Estrada and Floyd drove to Petitioner's

---

[1] Petitioner also named the Attorney General of the State of Oklahoma as a respondent. However, because Petitioner is incarcerated in a state prison facility, Warden Tracy McCullum is the only proper respondent.

house. Estrada went into Petitioner's house, spoke to Petitioner and purchased a small quantity of methamphetamine. When she returned to the car, Estrada gave the baggie of what was later confirmed to be methamphetamine to Scott. On the video footage of the controlled purchase, investigators could see a plastic container inside Petitioner's house.

Based on the evidence obtained from the controlled purchase, Scott obtained a search warrant that he executed on February 21, 2011. According to Scott's testimony, Petitioner asked, "Is this because I sold Sally an eight-ball?" as the search was being conducted. Scott further testified he informed Petitioner of his rights under Miranda, and Petitioner agreed to speak to him. When the police asked Petitioner about the contents of a small box they had found, Petitioner identified the substance as "dope." The plastic container seen in the video footage was not found in Petitioner's house during the search.

Petitioner was arrested and incarcerated in the Stephens County Jail. Petitioner made several phone calls from jail to Laveta Sue Baker, a friend who was staying at his house. The calls were recorded, and when Scott listened to the recorded phone calls, he determined Petitioner was using code to direct Baker to retrieve and sell drugs to raise money for Petitioner's defense.

Scott returned to Petitioner's property on February 25, 2011, and confronted Baker about the phone calls from Petitioner. Scott testified that Baker then drove him in a golf cart to an open field on Petitioner's property. Scott found the plastic container he

believed to be the one seen on the video of the controlled purchase. Scott called for assistance to secure the area and obtained a second search warrant allowing him to search the rest of the property again, including the contents of the container. Inside the container, Scott found digital scales and several plastic bags containing crystalline white substances. The Oklahoma State Bureau of Investigation identified the contents as methamphetamine with a combined weight of 20.46 grams.

Baker testified for the defense. She denied knowing anything about the drugs, stating that Petitioner had asked her to find and sell such items as air compressors and household appliances to raise money for his defense. She testified that Scott had ordered her to drive him in the golf cart to a specific spot on Petitioner's property. Baker's testimony contradicted that of Scott who testified Baker voluntarily got into the golf cart and drove him to the spot where he found the plastic container after he confronted her with the information he had gathered from the phone calls.

## II.    PROCEEDURAL HISTORY AND ISSUES PRESENTED

On March 10, 2013, Petitioner was convicted after a consolidated jury trial in the District Court of Stephens County, State of Oklahoma, on charges of Distribution and Possession of CDS (methamphetamine) after former conviction of a felony (AFCF) in Case No. CF-2011-46, and one charge of Trafficking in Methamphetamine, AFCF, in Case No. CF-2011-59. Petitioner waived his right to sentencing by the jury, and the trial judge sentenced him to twenty years' imprisonment and assessed a $25,000 fine for the distribution AFCF conviction. On the possession AFCF conviction, the trial judge

sentenced Petitioner to ten years' imprisonment and assessed a $7,500 fine. On his trafficking conviction in Case No. CF-2011-59, the trial court sentenced Petitioner to 25 years' imprisonment and assessed a $25,000 fine. The trial court ordered the two sentences in Case No. CF-2011-46 to be run concurrently with each other but consecutively to the sentence imposed in Case No. CF-2011-59. (ECF No. 1:1-2).

Petitioner appealed his conviction, fines and sentences to the Oklahoma Court of Criminal Appeals (OCCA), *see* Summary Opinion of the OCCA (ECF No. 7-3), raising these grounds: (1) the trial court erred in that the fine assessed for the distribution of CDS in Case No. CF-2011-46 exceeded the statutory limit; (2) the trial court's failure to instruct the jury on the lesser-included offense of possession of a controlled dangerous substance in Case No. CF-2011-59 deprived Petitioner of a fair trial; (3) prosecutorial misconduct constituted fundamental error and deprived Petitioner of a fair trial; (4) the trial court abused its discretion by ordering appellant to serve the two longest sentences consecutively and by considering an improper factor, (the quality of the methamphetamine), resulting in an excessive sentence that "should shock the conscience" of the court; and (5) the cumulative effect of errors deprived appellant of a fair trial. Brief of Appellant (ECF No. 7-1).

On May 6, 2013, the OCCA affirmed Petitioner's convictions, but granted relief on Petitioner's first ground by modifying his fine for distribution to $10,000, the statutory maximum fine. (ECF No. 7-3).

4

Petitioner filed an application for post-conviction relief (ECF No. 7-4) raising these grounds for the first time: (1) the February 25, 2011 warrantless entry into Petitioner's home after a controlled drug purchase was unlawful; (2) the drugs obtained through the February 25, 2011 search should have been deemed inadmissible despite a second warrant having been issued after the drugs were located; (3) trial counsel was ineffective in failing to object to the admission of evidence that should have been excluded; (4) convictions of distribution, possession and trafficking in CDS violated the prohibition against double jeopardy in the United States Constitution, the Oklahoma Constitution and Oklahoma state law; (5) Petitioner's due process rights were violated because prosecutors brought drug trafficking charges in Case No. CF-2011-59 only after Petitioner had successfully prevented the state from charging him with distribution and possession of CDS after five former felony convictions; (6) the February 21, 2011 search of Petitioner's house was not based on a facially valid warrant because the drug task force officer used a private citizen to purchase and possess a controlled substance; (7) trial counsel was ineffective in failing to raise the issues in propositions 1, 2, 4, 5, and 6; and (8) appellate counsel was ineffective in failing to raise the above claims on direct appeal. (ECF No. 7-4).

The trial court considered the merits of Petitioner's claims in the application for post-conviction relief and determined that none was meritorious. (ECF No. 7-6). On appeal, the OCCA affirmed the district court's denial of post-conviction relief. (ECF No. 7-8).

## III.  CLAIMS RAISED IN THE PETITION FOR HABEAS RELIEF

Except for the first claim raised on direct appeal—that the fine assessed for the distribution was excessive—Petitioner asserts all the grounds for relief raised both on direct appeal and in his application for post-conviction relief:

(1) the trial court's failure to instruct the jury on the lesser-included offense of possession of a controlled dangerous substance in Case No. CF-2011-59 deprived Petitioner of a fair trial;

(2) prosecutorial misconduct constituted fundamental error and deprived Petitioner of a fair trial;

(3) the trial court abused its discretion by ordering appellant to serve the two longest sentences consecutively and by considering an improper factor, (the quality of the methamphetamine), resulting in an excessive sentence that "should shock the conscience" of the court;

(4) Petitioner's Fourth Amendment rights were violated by "warrantless entry" into his house;

(5) the evidence found during the February 25, 2011 search of Petitioner's property was not based on a facially valid warrant and should have been suppressed;

(6) Petitioner was deprived of effective assistance of trial counsel in that trial counsel failed to object to the admission of suppressible evidence underlying the conviction for trafficking;

(7) convictions of distribution, possession and trafficking in CDS violated the prohibition against double jeopardy in the United States Constitution, the Oklahoma Constitution, and Oklahoma state law;

(8) The prosecutor violated Petitioner's due process rights by charging Petitioner with drug trafficking in Case No. CF-2011-59 only after Petitioner had successfully prevented the state from charging him with distribution and possession of CDS after five former felony convictions at the preliminary hearing;

(9) the drugs obtained through the February 21, 2011 search constitute "tainted evidence" because they were obtained as the result of the purchase of drugs by an unauthorized private citizen;

(10) trial counsel was ineffective in failing to raise the issues in grounds 4, 5, 6, 7, 8, and 9;

(11) appellate counsel was ineffective in failing to raise the above claims on direct appeal; and

(12) the cumulative effect of errors deprived Petitioner of a fair trial.

(ECF No. 1:4, 6, 7, 11-12).

## IV.    STANDARD OF REVIEW

Petitioner's grounds for relief are subject to review under the standards set forth in the Anti-terrorism and Effective Death Penalty act of 1996 (AEDPA). Under AEDPA, this Court may grant a Petitioner habeas relief only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not the rationale for the decision. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result—not its rationale—is 'legally or factually unreasonable.'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008). The absence of clearly established federal

law is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines that the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U. S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts in the Petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241[.]" *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (internal quotation and citation

omitted). Such errors are not cognizable in habeas unless the error rendered a petitioner's trial fundamentally unfair. *See Spencer v. Texas*, 385 U.S. 554, 563–564 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.... But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure") (citations omitted)).

## V.    REVIEW OF ISSUES RAISED ON DIRECT APPEAL

### A.    Ground One: The Trial Court's Failure to Instruct the Jury on Lesser Included Offense of Possession in Case No. CF-2011-59

In his first ground for relief, Petitioner contends the trial court erred by not instructing the jury on the lesser-included offense of drug possession in Case No. CF-2011-59 in which he was convicted of drug trafficking. Petitioner raised this ground for relief on direct appeal, and the OCCA denied relief on the merits: "[W]e find that there was no evidentiary support for a jury instruction on simple possession as a lesser-included offense of trafficking[,] and the trial court did not abuse its discretion by declining to give this instruction *sua sponte. McHam v. State*, 2005 OK CR 28, ¶ 21, 126 P.3d 662, 670; *McIntosh v. State*, 2010 Ok Cr 17, ¶ 2, 237 P.3d 800, 801." (ECF No. 7-3:4).

Petitioner is entitled to habeas relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). It follows that Petitioner may not obtain habeas relief on this claim, as there is no federal constitutional entitlement to a lesser-included instruction in a non-capital case.

9

The Tenth Circuit Court of Appeals has addressed the very issue:

> The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, *see Beck v. Alabama*, 447 U.S. 625, 638 n. 14, 100 S. Ct. 2382, 65 L.Ed.2d 392 (1980), and neither has this court. Our precedents establish a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988). Petitioner therefore cannot raise a debatable claim that he is entitled to habeas relief on this ground.

*Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). *See also Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) ("a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser included offense instruction even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense") (internal quotation marks omitted). Thus, Petitioner is not entitled to habeas relief on the ground that the trial court erred in failing to give an instruction on lesser-included offenses.

### B.      Ground Two: Prosecutorial Misconduct

Petitioner contends remarks made by the prosecutor during his opening and closing statements rendered his trial fundamentally unfair. During his opening statement, the prosecutor began asking a rhetorical question before he was interrupted by defense counsel's objection:

> When you hear the term "drug trafficker" or "drug dealer" what image comes to your mind? Do you think about what the drug dealer looks like? Do you picture some young punk kid with tattoos and spiked up hair and wearing leather and …

Trial Transcript Volume I (TR. I) p. 162. Petitioner contends the prosecutor's remarks prejudiced him because "the image of Mr. Moore as one who unlawfully sells drugs had been planted in the minds of the jurors." (ECF No. 7-1:26-27).

Petitioner also relies on the following statements in the prosecutor's closing argument:

> I'm sure when most, if not all, of you walked in here on Tuesday you probably had some kind of preconceived idea of what drug trafficking was all about. You may have had some Hollywood image in your head that was much more glamorous than the facts that you heard during the course of this trial.
>
> What you heard during the course of this trial is that Tommie Moore is a drug trafficker. He's a drug dealer and he possessed trafficking amounts of methamphetamine, and he took that methamphetamine and he sold it to Sally Estrada. He's a businessman in the business of trafficking that preys on drug addicts to make a profit.

(TR. III, 3); (ECF No. 7-1:27).

The OCCA considered the merits of this claim:

> [W]e find that prosecutorial misconduct did not deprive Moore of his right to a fair trial. The comments at issue were certainly not so flagrant that they infected Moore's trial and rendered it fundamentally unfair. Neither comment can be found to have deprived him of a fair trial or affected the jury's finding of guilt or the trial court's assessment of punishment. There was no plain error here.

(ECF 7-3:4).

Where a prosecutorial misconduct claim does not implicate any specific constitutional right, a petitioner will be entitled to habeas relief only if the prosecutor's improper remark resulted in a fundamentally unfair proceeding. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974); *see also, e.g., Rojem v. Gibson*, 245 F.3d

11

1130, 1142 (10th Cir. 2001). That is, to warrant habeas relief, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting [sentencing decision] a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (further citation, quotations omitted). In considering whether the prosecutor's remarks rendered the trial fundamentally unfair, this court considers the prosecutor's remarks "in context, considering the strength of the State's case and determining whether the prosecutor's challenged remarks plausibly could have tipped the scales in favor of the prosecution." *Rojem*, 245 F.3d at 1142-43 (further quotation omitted); *see also Donnelly*, 416 U.S. at 643 (considering fundamental fairness in light of entire proceedings). "Ultimately, we consider the probable effect the prosecutor's remarks had on the jury's ability to judge the evidence fairly." *Rojem*, 245 F.3d at 1143.

In this case, the OCCA's determination of Petitioner's claim based on prosecutorial misconduct was neither contrary to, nor an unreasonable application of Supreme Court law. Habeas relief should be denied on this claim.

### C. Ground Three: Excessive Sentence

Petitioner also challenges the trial court's ordering the two longest sentences to be served consecutively. According to Petitioner, his sentences are excessive. The OCCA determined Petitioner's sentences were not excessive:

> [A] sentence within the statutory range will be affirmed on appeal unless, considering all the facts and circumstances it shocks the conscience of this

Court. *Rea v. State*, 2001 OK CR 28, ¶ 5 n.3, 34 P.3d 148, 149 n.3. The district court sentenced [Petitioner] to terms of years allowed by statute properly taking into consideration the evidence presented at trial. The sentences imposed were not excessive[,] and the trial court did not abuse its discretion in either the term of years imposed or the decision to run the sentences consecutively. 22 O.S. 2011, § 976; *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

(ECF No. 7-3:4).

The decision of the OCCA should not be disturbed on habeas review. The Eighth Amendment does, of course, prohibit the infliction of cruel and unusual punishments and could be violated by a disproportionate sentence:

The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense."

*Graham v. Florida*, 560 U.S. 48 (2010) (*quoting Weems v. United States*, 217 U.S. 349, 367 (1910)). The proportionality requirement is, however, "'narrow'" and merely "'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* (*quoting Harmelin v. Michigan*, 501 U.S. 957, 997 (1991)).

To determine if a sentence is "grossly disproportionate," the Court must compare the gravity of the offense and the severity of the sentence. *Id.* "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (citation omitted). On rare occasions, however, the crime and the sentence bear a gross disproportion to one another. *See United States v. Gurule*, 461 F.3d 1238, 1247

(10th Cir. 2006). In these extraordinary circumstances, the sentence will be considered unconstitutional. But "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

Despite Petitioner's contentions, the mere length and consecutive (rather than concurrent) nature of Petitioner's sentences do not violate the Eighth Amendment's prohibition of cruel and unusual punishment. Sentencing is a matter of state law and is generally not cognizable on federal habeas review. *See Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). The Court "afford[s] wide discretion to the state trial court's sentencing decision," *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), and "the length of sentence is almost entirely a matter of legislative prerogative." *Gaines v. Hess*, 662 F.2d 1364, 1370 (10th Cir. 1981) (*citing Rummel v. Estelle*, 455 U.S. 263 (1980)). *See also Saccato v. Wilson*, 510 F. App'x 693, 695-97 (10th Cir. 2013) (agreeing with district court that petitioner's argument of an excessive sentence was a state-law claim not cognizable in a federal habeas proceeding).

Moreover, under Oklahoma law, separate sentences run consecutively unless the trial court expressly concludes otherwise. Okla. Stat. tit. 21, § 61.1. Petitioner has not shown that the OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Habeas relief is not warranted on this claim.

**D.    Ground Twelve: Cumulative Error**

Petitioner contends the cumulative effect of all the errors he asserts violated his right to a fair trial. Petitioner raised this claim on direct appeal.

"A cumulative error analysis aggregates all the errors that individually might be harmless, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (internal quotation marks omitted) (reviewing OCCA's cumulative error decision under AEDPA by reference to *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and *Le v. Mullin*, 311 F.3d 1002 (10th Cir. 2002)).

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such will suffice to permit relief under [the] cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (citations and internal quotations omitted).

In this case, the only error was the trial court's assessment of a fine above the statutory limit, and that error was a matter of state law. Moreover, the OCCA modified the sentence by lowering the amount of the fine to the legal limit. Because there are no *constitutional* errors to aggregate, Petitioner's cumulative error claim necessarily fails. *See Ochoa v. Workman*, 669 F.3d 1130, 1146 (10th Cir. 2012) (in the federal habeas

context, the only otherwise harmless errors that can be aggregated are federal constitutional errors). Petitioner is not entitled to relief on this ground.

## VI.    REVIEW OF GROUNDS RAISED FOR THE FIRST TIME IN APPLICATION FOR POST-CONVICTION RELIEF

The remaining claims were raised for the first time in Petitioner's application for post-conviction relief. Under Oklahoma law, claims that could have been raised on direct appeal, but were not, are deemed waived. *See* Okla. Stat. tit. 22, § 1086. Such claims, as Respondent notes, are generally procedurally barred from habeas review. *See Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120,1127 (2011) (federal habeas court will not review a claim rejected by a state court where state court decision rests on a state law ground that is independent of the federal question and adequate to support the judgment). The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Wainwright v. Sykes*, 433 U.S. 72, 82 (1977). The Tenth Circuit Court of Appeals has found  § 1086 to be an independent and adequate state procedural rule sufficient to bar a defaulted claim from consideration in a federal habeas proceeding. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008) (Okla. Stat. tit. 22, § 1086 is independent and adequate state procedural rule sufficient to bar claims not raised on direct appeal from habeas review).

Indeed, the trial court reviewed Petitioner's application for post-conviction relief and determined all but one of his claims, including his ineffective assistance of trial counsel claims, could and should have been raised on direct appeal and were subject to the waiver rule embodied in § 1086. (ECF No. 7-6:4). The one exception, the trial court

16

found, was Petitioner's ineffective assistance of appellate counsel claim—a claim that could not have been raised on direct appeal.[2]

The trial court analyzed Petitioner's ineffective assistance of appellate counsel claim under the familiar "cause and prejudice" standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, a litigant must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by the unconstitutional performance. *Id.* at 687. An attorney's performance is "constitutionally deficient" if the attorney "committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness." *Castro v. Ward*, 138 F.3d 810, 829 (10th Cir. 1998) (internal quotations and citations omitted). The "cause" prong of the Strickland test is not easily met. Counsel's performance must have been completely unreasonable, not merely wrong. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.

---

[2] Respondent asserts that Petitioner's ineffective assistance of appellate counsel claim should be viewed as an assertion of "cause" to overcome the procedural default. *See Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006) (finding allegations of ineffective assistance by appellate counsel to be sufficient to excuse the procedural bar). If so viewed, Petitioner would still have to demonstrate that the underlying claims were meritorious for the Petitioner to establish "prejudice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991), (holding modified by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012)) (state prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law). In this case, the OCCA stated, "Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction." (ECF No. 7-8:3) (*citing Logan v. State*, 2013 OK CR 2 ¶ 5, 293 P.3d 969). But the review in either case is the same: the OCCA looked to the merits of the underlying claims to determine whether appellate counsel had been ineffective in failing to raise those claims on direct appeal. This Court must do the same. The representation of appellate counsel could only be deemed ineffective if the underlying claims were meritorious. The OCCA reviewed the claims underlying Petitioner's ineffective assistance of appellate counsel claims and determined none was meritorious.

1997). To meet the prejudice prong, *Strickland* requires a litigant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. The cause and prejudice prongs of *Strickland* may be addressed in any order and need not both be addressed if the petitioner fails to make a showing of one. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

In this case, the trial court addressed only the prejudice prong of the *Strickland* test by "look[ing] to the merits of the omitted issues" to determine whether the outcome of Petitioner's direct appeal would have been different if appellate counsel had raised these issues on direct appeal. *See Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999) (quotations and citation omitted). The trial court reviewed the merits of the grounds for relief upon which Petitioner's ineffective assistance of appellate counsel claims were based and determined none was meritorious. (ECF No. 7-6:5-9).

On appeal of the trial court's denial of Petitioner's application for post-conviction relief, the OCCA also looked to the merits of the omitted claims and determined there was no reasonable probability that the outcome of Petitioner's appeal would have been different if these claims had been raised. (ECF No. 7-8:4).

On habeas review of Petitioner's ineffective assistance of appellate counsel claim, this Court, too, must look to the omitted claims to determine whether any are meritorious. If none of the omitted claims is meritorious, then Petitioner will not have demonstrated he was prejudiced by appellate counsel's alleged ineffectiveness.

18

The *Strickland* standard presents a substantial challenge to a litigant raising a claim of ineffective assistance of counsel before a state court. On federal habeas review, a petitioner seeking habeas relief based on an ineffective assistance of counsel claim, previously denied by a state court, faces an even greater challenge. In such cases, the federal court's review is "'doubly deferential.'" *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (*quoting Knowles v. Mirzayance*, 556 U.S. 111, (2009)). In other words, when assessing a state prisoner's ineffective assistance of appellate counsel claim on habeas review, "[w]e defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009). These standards govern this court's review of the omitted grounds for relief upon which Petitioner's ineffective assistance of appellate counsel claim is based.[3]

A. **Grounds Four, Five, Six, Nine, Ten and Eleven: Appellate Counsel's Failure to Raise an Ineffective Assistance of Trial Counsel Claim on Direct Appeal, Based on the Alleged Violation of Petitioner's Rights under the Fourth and Fourteenth Amendments and Trial Counsel's Failure to Object to "Suppressible Evidence"**

Petitioner challenges the validity of the February 25, 2011 search of his property that ultimately lead to the discovery of the plastic container holding enough methamphetamine to support the charge of trafficking in Case No. CF-2011-59.

---

[3] Petitioner's ineffective-assistance-of-appellate-counsel claims are actually based on trial counsel's alleged failure to raise issues or make objections before or during trial. The ineffectiveness of trial counsel, however, is subject to the same review. That is, the underlying grounds for relief must have been meritorious for Petitioner to establish prejudice. Therefore, the underlying ineffective assistance of trial counsel claims need not be discussed separately.

Petitioner characterizes the search as "warrantless," and contends the evidence found during the search was "tainted" and should have been suppressed under the exclusionary rule. He also contends that trial counsel erred in failing to object to the introduction of the "suppressible evidence." The trial court rejected the underlying claims on their merits, and the OCCA affirmed the trial court's judgment.

Generally, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). Here, however, Petitioner is asserting a claim of ineffective assistance of appellate counsel, a right distinct from his rights under the Fourth Amendment. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different, absent the excludable evidence. Thus, while Petitioner's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

In this case, Petitioner's claims are based on the faulty premise that Scott illegally entered Petitioner's property on February 25, 2011. But Scott went to Petitioner's property only after reviewing the recorded jailhouse phone calls that

indicated there were additional drugs on Petitioner's property. Scott found Baker, who was staying on the property while Petitioner was in jail. Scott testified that after he had advised Baker that he had heard the recordings of her conversations with Petitioner, Baker voluntarily took Scott to a field on Petitioner's property where the plastic container was found. Baker's actions constituted consent for Scott to search the premises. As an overnight guest in Petitioner's house, Baker had the authority to consent to the search. *See United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004) (third party's consent to search is valid if that person has either the "actual authority" or the "apparent authority" to consent to a search of that property) (citations omitted). Scott secured a search warrant after his initial contact with Ms. Baker and searched Petitioner's property again, including the contents of the plastic container. *See Original Record* (OR) CF-2011-59 at 25-27; TR II at 94-102.

Petitioner's characterization of the search as "illegal" is simply wrong. Because Baker consented to the search that yielded the plastic container, and because Scott secured a warrant to search the container, neither search violated the Fourth Amendment. Therefore, the evidence upon which Petitioner's trafficking conviction was based was properly admitted into evidence. Thus, the OCCA's decision that appellate counsel was not ineffective for failing to raise an issue based on trial counsel's failure to object to the evidence at trial, is neither contrary to, nor an unreasonable application of Supreme Court law.

**B.**    **Ground Seven: Appellate Counsel's Failure to Assert a Federal Double Jeopardy Claim and a Claim Based on Oklahoma's State Statutory Prohibition against "Multiple Punishment"**

Petitioner contends appellate counsel was ineffective in failing to challenge his convictions for possession, distribution and trafficking in methamphetamine on grounds that the convictions violated the Double Jeopardy Clause of the Fifth Amendment and Oklahoma law barring multiple punishments for the same act.[4] A habeas petition alleging multiple punishment double jeopardy is reviewed only to determine whether the state trial court imposed a sentence greater than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Federal courts are "bound by a state court's determination of the legislature's intent.'" *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998) (*quoting Birr v. Shillinger*, 894 F.2d 1160, 1161 (10th Cir. 1990)). Thus, "if the highest state court determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion." *Cummings* at 615.

The trial court used the proper analysis for double jeopardy claims for multiple prosecutions or punishments:

> The proper analysis of double jeopardy claims for multiple prosecutions or punishments arising from the same challenged conduct is the "same elements test" or the "same evidence test," which is the traditional double

---

[4] To the extent Petitioner argues that his conviction violates the prohibition on multiple punishments found at Okla. Stat. tit. 21, § 11, the state court's interpretation of its own laws is not a cognizable claim for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, this Court is limited to deciding whether Petitioner's conviction violated the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

jeopardy analysis. That is, whether each offense contains an element not contained in the other; or, whether each offense requires proof of a fact which the other does not.

A review of the proof required or the requisite elements of each of the offenses Petitioner was convicted of reveals that each offense is a separate and distinct crime with dissimilar elements; each contains an element or requires proof of elements not contained or required of the other. Accordingly, applying the "same elements test" or "same evidence test" a double jeopardy claim fails.

(ECF No. 7-6:6-7). The OCCA affirmed the trial court's decision on claims raised in Petitioner's post-conviction action without further analysis. (ECF No. 7-8).

The trial court referenced the Oklahoma Uniform Jury Instructions for distribution, possession and trafficking in methamphetamine to determine whether Petitioner's convictions for distribution of, possession of and trafficking in methamphetamine required the same elements and the same evidence of proof:

**Distribution:**

No person may be convicted of distributing a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

A.     First, knowingly/intentionally;

B.     Second, distributing;

C.     Third, the controlled dangerous substance of methamphetamine.

Vernon's Okla. Forms 2d, OUJI-CR 6-2 (*citing* Okla. Stat. tit 63, § 2-401(A)(1)).

**Possession:**

No person may be convicted of possession of a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

A.    First, knowing and intentional;

B.    Second, possession;

C.    Third, of the controlled dangerous substance of methamphetamine.

Vernon's Okla. Forms 2d, OUJI-CR 6-6.

**Trafficking:**

You are instructed that no person may be convicted of trafficking in illegal drugs unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

A.    First, knowingly;

B.    Second, possessed;

C.    Third, 20 grams or more of methamphetamine.

Vernon's Okla. Forms 2d, OUJI-CR 6-13 (*citing* Okla. Stat. tit. 63, 2-415(c)).

It is evident that the crimes with which Petitioner was charged, tried and convicted meet the separate elements test. Thus, the decision of the OCCA rejecting Petitioner's claim of ineffective assistance of counsel is neither contrary to, nor an unreasonable application of Supreme Court law.

**C.     Ground Eight: Appellate Counsel's Failure to Raise a Claim Based on a Due Process Violation**

In his final ground for relief, Petitioner contends his due process rights were violated when the prosecution had enough evidence to charge him with trafficking, but waited until after the preliminary hearing in Case No. CF-2011-46 to assert the trafficking charge in Case No. CF-2011-59. (ECF No. 1:12). Petitioner suggests that the new charges were filed only because he had successfully defeated the prosecution's attempt to charge him in the former case after five felony convictions.

The trial court addressed the merits of this claim underlying Petitioner's ineffective assistance of counsel claim:

> The timeliness of the State bringing the trafficking charge is measured by the running of the statute of limitations or whether the State had previously unsuccessfully sought to charge Petitioner with this crime resulting in a bar to subsequent prosecution. Neither had occurred here and the fact that the State didn't elect to charge Petitioner until after the preliminary hearing on the charges in Case No. CF-2011-46 did not prohibit the State charging and prosecuting Petitioner with the trafficking offense.

(ECF No. 7-6:7). The OCCA affirmed the trial court's decision without further analysis.

The state court determined, in essence, that the subsequent charge of trafficking did not violate state law. Moreover, in a habeas proceeding claiming a denial of due process, federal courts "'will not question the evidentiary or procedural rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995) (*quoting Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991).

There is no basis for a determination that the separate filing of trafficking charges prejudiced Petitioner. The state court's decision was neither contrary to, nor an unreasonable application of Supreme Court law.

## RECOMMENDATION

It is recommended that Petitioner's Petition for Writ of Habeas Corpus, **(ECF No. 1)**, be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **April 25, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on April 7, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

26